W. V. KNIFFIN and Evelyn Kniffin, Plaintiffs-Appellees,

and

Perry Park Metropolitan District, Martin H. Platt and Alice Platt, Plaintiffs,

v.

COLORADO WESTERN DEVELOPMENT COMPANY, a Colorado Corporation, and Lee E. Stubblefield, Defendants-Appellants.

No. 79CA0200.

Colorado Court of Appeals, Div. II.

Aug. 28, 1980.

Rehearings Denied Sept. 18, 1980.

Certiorari Denied Jan. 5, 1981.

Robert J. Dyer III, Denver, for plaintiffs-appellees.

Clark, Martin & Pringle, Bruce D. Pringle, Eric J. Pringle, Denver, for defendants-appellants.

KIRSHBAUM, Judge.

Defendants, Colorado Western Development Company (Colorado Western) and Lee E. Stubblefield, appeal a trial court judgment awarding damages of $1,355,209 to

plaintiffs, W. V. Kniffin and Evelyn Kniffin, on claims of breach of contract and preferential transfer. Defendants also appeal the trial court's certification of those two claims as class action claims. We affirm in part and reverse in part.

The following facts are disclosed by the record. Colorado Western began to develop the Perry Park Residential Community near Colorado Springs in 1967. Stubblefield was its president and principal shareholder at all relevant times. Perry Park consists of Filings 1–7, 9 and 11. Filings 1, 2 and 3 were recorded prior to March of 1969. Filing 7 was recorded in December 1970 and Filing 11 was recorded on August 3, 1971.

In 1969 a property report describing the project was prepared pursuant to the Federal Interstate Land Sales Full Disclosure Act, 15 U.S.C.A. § 1701 et seq. Colorado Western prepared and distributed numerous sales brochures defining the Perry Park "way of life" and describing a select residential community of persons sharing interests in outdoor recreational activities.

In 1970, the Kniffins, then residents of New York, learned of the Perry Park project. They visited the site and received a copy of the property report and several promotional brochures. Mr. Kniffin was interested especially in proposed facilities for boating, fishing, and water skiing. The sales literature emphasized the proposed construction of a 120-acre lake to be located near the entrance to the project. The Kniffins were impressed with the vivid descriptions of the Perry Park way of life.

In early August of 1970 the Kniffins purchased a lot in Filing 7 of the project. On August 14, 1970, Mrs. Kniffin purchased an adjacent lot. When they realized that much more development would be necessary to give access to their Filing 7 lots, the Kniffins purchased a third lot located in Filing 11 in May of 1971. They constructed a residence on their Filing 11 lot and in 1973 they moved to Perry Park.

The 1969 property report furnished to the Kniffins contained the following pertinent provisions:

"9. (a) The following recreational facilities are currently available in Perry Park:

. . . . .

3. Fishing in three stocked lakes.
4. Sailing, boating and water skiing.

. . . . .

(b) The following facilities are proposed or partially completed: . . .

The subdivider has posted bonds with the County of Douglas the bonds made payable to the County of Douglas, which guarantee completion of the roads to County standards. The access road which is essentially completed is subject to a bond with the County of Douglas in the amount of $20,000. The roads in Perry Park East Filing No. 1 are covered by a road completion bond in the amount of $35,000. The roads in Perry Park East Filing No. 2 are subject to a bond in the amount of $23,000. The subdivider has posted a cash bond for the benefit of the County Commissioners, County of Douglas, State of Colorado, guaranteeing completion of the roads and water systems in Perry Park Filings No. 2 and No. 3 in the amount of $60,000. These funds are on deposit in the Douglas County Bank, Castle Rock, Colorado.

. . . . .

10. The following services are now available in the subdivision:

. . . . .

2. The streets in the subdivision are graveled streets; the main arterial roads will be blacktopped by October 1970 . . ."

The purchase contracts executed by the Kniffins and Colorado Western contain standard clauses providing that any representations, inducements, promises, or agreements, oral or otherwise, made by either party but not contained in the written agreement are of no force or effect. The contracts also contain the following provision:

"The Buyer . . . acknowledges . . . that he has been provided with a copy of the property report and read and understood it . . ."

The trial court concluded that the provisions of the property report were incorporated into the three real estate purchase contracts, but that all oral representations of Colorado Western salespersons and all statements contained in Colorado Western's sales brochures were excluded from the contracts.

In November 1971 Colorado Western received a report analyzing requirements to construct a dam and create a large reservoir at the entrance to Perry Park for recreational and water supply purposes. In 1972 it received a supplemental analysis of specific problems related to such a project. Colorado Western did not construct that proposed dam and reservoir and did not build any other recreational lake.

In 1973, Colorado Western ceased developing Perry Park. At that time, substantially all the platted roads in Filings 1, 2, and 3 had been constructed to county standards and had been accepted by the county for maintenance. In addition, Colorado Western had constructed other platted roads in Filings 2, 3, 4, 5, and 7 to county standards which had not been accepted for maintenance by the county; Colorado Western maintained those roads until 1977, when it ceased doing so. They subsequently deteriorated, and were in need of substantial repair by 1979. A paved road maintained by the county extends from Perry Park's entrance to within 200 yards of the Kniffins' home in Filing 11; a gravel access road extends over the remaining distance. Access roads are available to most of the lots in Filings 1, 2, and 11, although many of them were completed by the Perry Park Metropolitan District and not by Colorado Western. Most of the roads platted in filings other than 1, 2, and 11 have never been cut through.

Perry Park has never contained three lakes. A 25-acre lake, Lake Wauconda, was in existence in 1969; Colorado Western stocked that lake for fishing once, but did not stock it again. At one time limited sailing facilities were available on Lake Wauconda, and canoeing is possible. Water skiing facilities have never been available at Perry Park.

On July 27, 1977, Colorado Western was insolvent. Stubblefield was then board chairman and owned 71% of Colorado Western's stock. At that time Colorado Western was in debt to Stubblefield for advances he had made to operating capital. The debt was unsecured. In August of 1977, Colorado Western transferred substantially all its assets to Stubblefield for the stated sum of $2.8 million. In return, Stubblefield cancelled the unsecured debt, assumed encumbrances on the corporate assets for which he was personal guarantor, and agreed to pay current corporate liabilities.

In January of 1979, Stubblefield sold almost all the assets he had received from Colorado Western. The buyer assumed corporate liabilities and encumbrances on corporate assets and issued promissory notes to Stubblefield in the amount of $2,550,000. Stubblefield subsequently assigned the notes to Colorado Western.

The original complaint was filed October 18, 1977, by the Kniffins, Martin H. Platt, Alice Platt, and the Perry Park Metropolitan District. It contained seven claims and requested relief in the nature of a declaratory judgment, specific performance and a mandatory injunction. On April 11, 1978, the plaintiffs filed a motion for class action certification pursuant to C.R.C.P. 23(b)(2) or, alternatively, C.R.C.P. 23(b)(3), and a motion to amend the complaint to add an eighth and a ninth claim, one of which alleged a preferential transfer of assets to Stubblefield. On May 12, 1978, after a hearing, the trial court denied the motion for class certification and granted the motion to amend the complaint.

On December 8, 1978, a hearing was held respecting a motion filed by defendants requesting dismissal of plaintiff Perry Park Metropolitan District for lack of standing. The trial court concluded at that time that the District must be deemed to have standing as a third-party beneficiary. The court emphasized, however, that its ruling merely denied defendants' motion and that the question of the District's third-party beneficiary standing remained an issue in the

case. The Kniffins did not request reconsideration of the class certification issue subsequent to that date.

The trial commenced on January 9, 1979, and on January 29, 1979, the trial court entered judgment for the Kniffins upon their claims of breach of contract and preferential transfer and against the Kniffins on their other claims. The final judgment also dismissed all claims of the Platts and of Perry Park Metropolitan District; those plaintiffs do not appeal the judgments of dismissal.

The trial court concluded that Colorado Western agreed to develop and complete a road system in Perry Park, to provide recreational facilities, and specifically promised to provide three lakes stocked for fishing and capable of supporting sailing and water skiing activities for the Kniffins' use. It further found that Colorado Western agreed to perform these promises within a reasonable time, and that it had breached its contracts with the Kniffins by its failure to fulfill these promises. Concluding that the 1977 transfer of assets to Stubblefield constituted a preferential transfer, thus rendering Stubblefield and Colorado Western jointly and severally liable to the Kniffins, the trial court assessed as damages the cost to complete the roads in the project and the cost to build a recreational water system. The trial court ordered the Kniffins to deliver all damages received by them to the Board of Directors of the Perry Park Metropolitan District. The damage award of $1,355,209 was based on the trial court's conclusions that the cost to complete the roads was at least $855,209 and that the minimum cost to build a 125-acre lake and reservoir was $500,000.

The trial court also stated that although the Kniffins' request for class action certification pursuant to C.R.C.P. 23(b)(2) or 23(b)(3) had been denied prior to trial, it had *sua sponte* "reconsidered the question under Rule 23(b)(1)." The trial court then granted the motion with respect to the Kniffins' claims of breach of contract and preferential transfer.

## I. COLORADO WESTERN'S CONTRACTUAL OBLIGATIONS

Defendants contend that the trial court erroneously interpreted the contracts in dispute. We disagree.

■ The trial court concluded that Colorado Western agreed to develop "a road system in Perry Park that would meet county standards for roads." It reached this conclusion on the basis of statements contained in the 1969 property report, concluding that the report was integrated into the written contracts.

The statements contained in the property report are ambiguous with respect to the particular roads described therein. Descriptions of construction and maintenance of roads appear in two sections of the report, one specifically dealing with "proposed" or "partially completed" facilities, the other denominated "services . . . now available." The former section contains the statement that sufficient bonds had been posted to "guarantee completion of the roads." The report was delivered to the Kniffins by Colorado Western at the time they signed their initial contract in 1970. We agree with the trial court's conclusion that the 1969 property report was integrated into the Kniffins' contracts, which were prepared by Colorado Western. Under these circumstances, any ambiguities in the language of the report must be construed against Colorado Western. *See M. R. Mansfield Realty Inc. v. Sunshine*, 38 Colo. App. 334, 561 P.2d 342 (1976), *aff'd*, 195 Colo. 95, 575 P.2d 847 (1978).

■ The trial court also concluded that Colorado Western agreed "that three lakes would be available in Perry Park, that the lakes would be stocked for fishing and that facilities for failing and water skiing would be available for use by Kniffins." The 1969 property report states that fishing in three stocked lakes and sailing, boating and water skiiing are "currently available." It also describes "water provided by Colorado Western Development Co." as a service "now available." The trial court concluded

that because Colorado Western intended to provide such facilities, it had not made fraudulent representations to the Kniffins even though the statements were not true. The evidence supports the trial court's conclusions that, pursuant to the contract and property report, Colorado Western agreed to provide the Kniffins with three lakes capable of supporting adequate boating, fishing, and water skiiing activities, and that it failed to fulfill that agreement.

## II. THE MEASURE OF DAMAGES

Defendant next contends that under the circumstances of this case, the trial court erred in utilizing a cost of completion basis to assess damages. We agree.

■ The general measure of damages for contract cases is that sum which places the non-defaulting party in the position such party would have enjoyed had the breach not occurred. *Taylor v. Colorado State Bank*, 165 Colo. 576, 440 P.2d 772 (1968). This general rule has been applied to cases wherein a builder has breached his agreement regarding construction of a residence. *Campbell v. Koin*, 154 Colo. 425, 391 P.2d 365 (1964); *Summit Construction v. Yeager Garden Acres, Inc.*, 28 Colo.App. 110, 470 P.2d 870 (1970).

This jurisdiction has not applied the general contract measure of damages to a case involving a promisor's breach of promise to construct general amenities located on property not owned by the promisee, commonly referred to as "off-site" facilities. Here the facilities in question—roads throughout the project and water recreational facilities—were proposed to be located on property not owned by the Kniffins. Other jurisdictions have concluded that the proper measure of damages to a person injured by breach of contract for failure to construct off-site improvements is the diminution in value of the property purchased. *See Coughlin v. Blair*, 41 Cal.2d 587, 262 P.2d 305 (1953); *Barcroft Woods, Inc. v. Francis*, 201 Va. 405, 111 S.E.2d 512 (1959).

■ Damages are awarded in contract disputes to make the non-breaching party whole. *Taylor v. Colorado State Bank, supra.* They should not be awarded, absent fraud or other unusual circumstances, to punish the breaching party. Here the trial court concluded that neither defendant perpetrated fraud upon the Kniffins.

■ The trial court found that the diminution in value to the Kniffins' three properties totaled $11,000, and that as of the date of trial it would cost $1,355,209 to complete the roads and the water recreational facilities. Of that sum, $500,000 was found to be the minimum amount necessary to construct the 125-acre lake and dam project described in the sales brochures and the 1971 and 1972 engineering reports. The only evidence of damages for failure to provide recreational water facilities presented by the Kniffins was the amount required to build that particular lake and dam.

While Colorado Western was obligated to provide three lakes of some type, the trial court concluded that Colorado Western had not agreed to build that particular project. To the contrary, it concluded that statements of sales personnel and descriptions in sales literature—the only sources of the Kniffins' information about that proposed project—were excluded from the contracts. Thus, the cost of that project is not the proper basis to assess the cost of constructing "adequate water recreational facilities."

The Kniffins are entitled to recover damages for any loss they actually sustained because of defendants' breach of contract. They are not entitled to benefit from an enhanced award for their expectation of a "way of life" described in sales literature which was not part of their agreement with Colorado Western, and the trial court's order directing them to deliver any damages received to the Perry Park Metropolitan District does not negate the fact that the ruling grants the Kniffins aspects of a "way of life" to which they were not entitled by contract. However appropriate in other contexts, we conclude that application of the cost to complete measure of damages in this case would unjustly benefit the Kniffins, to the great detriment of the defendants.

The trial court has determined, alternatively, the total diminution in value to the Kniffins' properties. That standard should have been applied here. As that amount is not disputed on appeal, further litigation of that issue is unnecessary.

### III. CLASS ACTION CERTIFICATION

Defendants also contend that the trial court erred in certifying two claims of the Kniffins as class action claims. We agree.

■ A party requesting class action certification has the burden of proving that all the requisites of C.R.C.P. 23(a) have been satisfied. *Borwick v. Bober*, 34 Colo.App. 423, 529 P.2d 1351 (1974). C.R.C.P. 23(a) contains the following pertinent provision:

"One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) The class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

■ In this case, the class as defined by the trial court consisted of all persons who had purchased lots in Perry Park Filings 1 through 7, 9, and 11 during 1970 and 1971 from Colorado Western; had received the 1969 property report; and had retained ownership of their property until January 29, 1979. No evidence was introduced to indicate how many individuals had actually received the 1969 property report and had continued to own such property through January 29, 1979. One seeking class certification is required to establish by competent evidence that the class is sufficiently large to render joinder impracticable. C.R.C.P. 23(a)(1). The actual size of the defined class is a significant factor in such determination, and mere speculation as to size is insufficient. *See Sims v. Parke Davis & Co.*, (D.C.) 334 F.Supp. 774, *aff'd*, 453 F.2d 1259 (6th Cir. 1971), *cert. denied*, 405 U.S. 978, 92 S.Ct. 1196, 31 L.Ed.2d 254 (1972); 3B J. Moore & J. Kennedy, *Moore's Federal*

*Practice* ¶ 23.05[3] (2d ed. 1980). Having produced no evidence of the size of the defined class or any other basis to permit a conclusion that joinder was impracticable, the Kniffins failed to sustain their burden of proof pursuant to C.R.C.P. 23(a)(1).

In view of this conclusion, we need not address defendants' further contention that the trial court's *sua sponte* reconsideration of the Kniffins' request for class action certification, after having denied such request prior to trial and having failed to reserve the right to reconsider the issue, was unauthorized by C.R.C.P. 23 and violated defendants' constitutionally protected due process rights.

### IV. PREFERENTIAL TRANSFER

Defendants contend that the trial court erred in concluding that the August 1977 transaction which resulted in the transfer of Colorado Western's assets to Stubblefield constituted a preferential transfer. We disagree.

■ A preferential transfer occurs when an insolvent corporation transfers assets to a corporate officer or director for the benefit of the transferee and to the detriment of the general creditors of the corporation. *Crowley v. Green*, 148 Colo. 142, 365 P.2d 230 (1961); *Epcon Co. v. Bar B Que Baron International, Inc.*, 32 Colo. App. 393, 512 P.2d 646 (1973). The evidence supports the trial court's conclusions that the transfer benefited Stubblefield, an unsecured creditor, to the detriment of all other unsecured creditors of Colorado Western. We find no basis to support defendants' contention that only creditors who filed claims prior to a preferential transfer can claim injury as a result thereof.

### V. STATUTE OF LIMITATIONS

■ Defendants also contend that the trial court erred in failing to hold that the Kniffins' claims were barred by the six-year limitations provision of § 13–80–110, C.R.S. 1973. We disagree. The trial court concluded that Colorado Western agreed to perform the contract obligations within a

reasonable time and that it did not abandon its efforts to perform until 1973. The evidence supports the trial court's conclusions; we may not disturb it on appeal. *Broncucia v. McGee*, 173 Colo. 22, 475 P.2d 336 (1970).

### VI. WAIVER AND MOTION FOR CONTINUANCE

Finally, upon review of the record, we find no merit to defendants' contentions that the Kniffins waived their claims and that the trial court erred in failing to grant a motion for continuance seven days prior to trial.

The judgment of the trial court is affirmed insofar as it finds the defendants liable to the Kniffins. Those portions of the judgment granting the Kniffins' request for class action status and awarding the Kniffins $1,355,209 with directions to deliver all damages received to the District are reversed. The cause is remanded for vacation of the judgment previously entered and the entry of a judgment on behalf of the Kniffins and against defendants, jointly and severally, in the sum of $11,000, plus interest and costs.

RULAND and STERNBERG, JJ., concur.