**Tania LaBERENZ and Dr. J. Bradley Gibson, Plaintiffs–Appellants,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant–Appellee.**

No. 06CA0276.

Colorado Court of Appeals, Div. VI.

Sept. 6, 2007.

Rehearing Denied Oct. 11, 2007.

Certiorari Denied April 14, 2008.

The Carey Law Firm, Leif Garrison, Robert B. Carey, Colorado Springs, Colorado; Todd A. Travis, P.C., Todd A. Travis, Englewood, Colorado; Hagens Berman, LLP, Steve W. Berman, Seattle, Washington, for Plaintiffs–Appellants.

Harris, Karstaedt, Jamison & Powers, P.C., A. Peter Gregory, Heather A. Salg, Englewood, Colorado, for Defendant–Appellee.

Opinion by Judge LOEB.

Plaintiffs, Tania LaBerenz and Dr. J. Bradley Gibson, appeal the order of the district court denying their motion for class certification pursuant to C.R.C.P. 23 in this case against defendant, American Family Mutual Insurance Company. We affirm in part, reverse in part, and remand with directions.

## I. Facts and Procedural Background

LaBerenz was insured under a policy with American Family when she was injured in an accident in October 2001. LaBerenz's policy contained personal injury protection (PIP) benefits, as required by Colorado's former Auto Accident Reparations Act (No–Fault

Act), Colo. Sess. Laws 1973, ch. 94, § 13–25–1, et seq., at 334 (formerly codified as amended at § 10–4–701, et seq.; repealed effective July 1, 2003, Colo. Sess. Laws 2002, ch. 189, § 10–4–726 at 649). Rather than obtaining these benefits through a statutorily allowed preferred provider organization (PPO), LaBerenz chose to pay a higher premium that entitled her to have all covered charges paid by American Family so long as they were reasonable and necessary.

After notifying American Family of her injury, LaBerenz received paperwork to apply for her PIP benefits, along with a letter that stated, "We determine reasonable fees using an automated medical bill audit program. The program includes MDR's (Ingenix/ Medicode) National Fee Database of prevailing charges for the geographic area medical care was provided."

LaBerenz submitted her application for PIP benefits. Dr. Gibson provided medical treatment to LaBerenz in connection with her injuries from the accident and submitted his bills to American Family for payment.

Under § 10–4–706(1)(b) of the No–Fault Act, insurers are required to pay reasonable and necessary expenses for medical care performed within five years after an accident for bodily injury arising out of the use or operation of a motor vehicle. Under § 10–4–706(1) of the No–Fault Act, an insurer has thirty days to pay benefits after receiving reasonable proof of the fact and amount of expenses incurred. Further, under guidelines established by the Colorado Commissioner of Insurance, "[i]n the usual case, for purposes of triggering the 30-day time period described in § 10–4–708(1), C.R.S., the following documents are sufficient to establish reasonable proof of the fact and amount of the expenses incurred for covered medical and rehabilitative PIP benefits": a properly executed application for benefits from the PIP claimant; and an initial notice or billing statement to the insurer from the provider of benefits that includes certain basic information. Division of Insurance Reg. 5–2–8(4)(C)(1), 3 Code Colo. Regs. 702–5. Under the Unfair Competition–Deceptive Practices Act, § 10–3–1101, et seq., C.R.S.2006, an insurance company may not refuse to pay a claim without conducting a reasonable investigation based upon all available information. *See* § 10–3–1104(1)(h)(IV), C.R.S.2006.

As pertinent here, in July 2000, American Family began using a bill review software program that reviewed non-PPO bills submitted by insureds and their health care providers to evaluate whether the charges were reasonable. The software was used to access a database, which was updated approximately every two months. Each medical service was categorized by a code, and the database compared the charges for a particular code to other charges for the same code in the city or town where the treatment had been performed, as determined by the first three digits of the zip code of the locations (referred to as a geozip). If the amount of the bill exceeded the amount charged at the eighty-fifth percentile of fees for the same procedure as performed by other providers in the geozip, an explanation of benefits (EOB) and two form letters were generated, repricing the bill and allowing payment at the eighty-fifth percentile under Explanation Code 41. This code stated that the "amount allowed is based on provider charges within the provider's geographic region." An American Family adjuster reviewed this paperwork before sending it to the insured and the medical provider.

The standard letter to the medical provider stated in pertinent part:

> We determine reasonable fees using the above listed sources contained within an automated medical bill audit program. Fees are identified via MDR's National Fee Database of prevailing charges for the geographic area in which medical care was given.

> The enclosed Explanation of Benefits delineates the results of the analysis with specific reasons for adjustment of the bill(s). Please adjust the patients' bill accordingly. If you have any questions or further information to provide that might change our analysis, please submit this in writing to my attention.

The letter to the insured advised the insured of the repricing and stated that if the insured received a request for payment on

the remaining balance, the request should be forwarded to American Family.

American Family reduced a portion of LaBerenz's medical bills, including those from Gibson. Many, though not all, of the bills were reduced at least in part based upon Explanation Code 41.

Plaintiffs filed this action, which they characterize as a straightforward challenge to the legality of American Family's systematic use of its medical claims software and database to assess the reasonableness of medical bills. Plaintiffs' amended class action complaint alleges claims for declaratory relief, breach of contract and violation of the No–Fault Act, breach of the implied covenant of good faith and fair dealing, statutory willful and wanton breach of contract, violation of the Colorado Consumer Protection Act, § 6–1–105, C.R.S. 2006, and civil conspiracy.

The amended complaint further alleges that the claims are brought on behalf of a class of non-PPO insureds and their medical providers whose bills American Family reduced solely by use of its medical claims processing software and database. Plaintiffs allege that they and all other class members sustained damages arising out of American Family's course of conduct, and they seek compensatory, statutory, and exemplary damages for themselves and the members of the class. They also seek a declaratory judgment that American Family was obligated to provide coverage for all reasonable charges for the PIP-related treatment obtained by LaBerenz and the members of the class.

During discovery on class certification, plaintiffs propounded an interrogatory to American Family, asking it to state the number of claims "to which the 'Explanation Code' 41 or GEOGRAPHIC RE PRICING was applied, without regard to whether each medical charge was thereafter reduced, paid, or subject to an additional review as to the reasonableness of each charge." American Family responded that, between 2000 and 2003, it reduced payment on over 56,000 medical bills in which Explanation Code 41 appeared. Plaintiffs' discovery did not establish the number of providers involved in these bills or the number of bills later paid in full.

Plaintiffs moved for class certification in June 2005, defining the proposed class as follows:

All eligible injured persons, as defined by C.R.S. § 10–4–707, insured by American Family Mutual Insurance Company ("American Family") in Colorado whose non-PPO PIP-related medical services were paid under the Explanation Codes 41 (the "Class Members") from July 10, 2000, until the present (the "Class Period"), and all health care providers whose medical bills were reduced under Explanation Codes 41.

After briefing and a hearing, the district court denied plaintiffs' motion for class certification on the basis that they had not met their burden of demonstrating numerosity, commonality, or typicality, pursuant to C.R.C.P. 23(a)(1)-(3). The court did not address adequacy pursuant to C.R.C.P. 23(a)(4) or the applicability of C.R.C.P. 23(b).

After the entry of a C.R.C.P. 54(b) order, plaintiffs brought this appeal of the district court's order denying class certification.

## II.  Overview of Class Action Law

The basic purpose of a class action is "to eliminate the need for repetitious filing of many separate lawsuits involving the interests of large numbers of persons and common issues of law or fact by providing a fair and economical method for disposing of a multiplicity of claims in one lawsuit." *Mountain States Tel. & Tel. Co. v. Dist. Court,* 778 P.2d 667, 671 (Colo.1989). "This purpose is realized by permitting one or more members of the class to sue or be sued on behalf of all class members." *Mountain States Tel. & Tel. Co. v. Dist. Court, supra,* 778 P.2d at 671.

Because class actions serve an important function in our system of civil justice, a trial court has considerable discretion to manage them. *Air Commc'n & Satellite Inc. v. Echostar Satellite Corp.,* 38 P.3d 1246, 1251 (Colo.2002). "The decision of whether to certify a class action lies within the discretion of the trial court and will not be disturbed unless the decision is clearly errone-

ous and an abuse of discretion." *Toothman v. Freeborn & Peters*, 80 P.3d 804, 809 (Colo. App.2002) (quoting *Friends of Chamber Music v. City & County of Denver*, 696 P.2d 309, 317 (Colo.1985)); *see Kuhn v. State*, 817 P.2d 101, 105 (Colo.1991). An abuse of discretion occurs where the trial court's decision is manifestly arbitrary, unreasonable, or unfair, or when the trial court applies incorrect legal standards. *Medina v. Conseco Annuity Assurance Co.*, 121 P.3d 345, 347 (Colo.App. 2005).

■■■ "The class action advocate bears the burden of demonstrating that the claims asserted are cognizable as a class action." *Ammons v. Am. Family Mut. Ins. Co.*, 897 P.2d 860, 862 (Colo.App.1995); *see Levine v. Empire Sav. & Loan Ass'n*, 197 Colo. 293, 297, 592 P.2d 410, 413 (1979) (burden is upon plaintiff to establish his or her right to maintain a class action). However, C.R.C.P. 23 allows a court flexibility in shaping a class action. *See Goebel v. Colo. Dep't of Insts.*, 764 P.2d 785, 794 (Colo.1988). C.R.C.P. 23(c)(4) is particularly helpful in enabling courts to restructure complex cases to meet the requirements of C.R.C.P. 23, and a court may utilize its powers under C.R.C.P. 23(c)(4) on its own initiative to create subclasses, where appropriate. *See Goebel v. Colo. Dep't of Insts., supra*, 764 P.2d at 794 ("in some cases, it may be an abuse of discretion if the trial court does not initiate action under 23(c)(4) to structure the class action"); *Toothman v. Freeborn & Peters, supra*, 80 P.3d at 816 (court may act sua sponte, depending on the circumstances, to create subclasses).

Under C.R.C.P. 23(a), one or more members of a class may sue as representative parties only if:

(1) The class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

If the requirements of C.R.C.P. 23(a) are satisfied, an action then may be maintained as a class action only if it meets the additional requirements of one of the three subsections of C.R.C.P. 23(b). *State v. Buckley Powder Co.*, 945 P.2d 841, 844 (Colo.1997). C.R.C.P. 23(b) provides in pertinent part:

Any action may be maintained as a class action if the prerequisites of section (a) are satisfied, and in addition:

(1) The prosecution of separate actions by or against individual members of the class would create a risk of:

(A) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or

(B) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interest; or

(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

■■■ Because C.R.C.P. 23 is virtually identical to Fed.R.Civ.P. 23, we may look to case law regarding the federal rule for guidance. *State v. Buckley Powder Co., supra*, 945 P.2d at 844; *Toothman v. Freeborn & Peters, supra*, 80 P.3d at 809. In that regard, Rule 23 should be construed liberally to support its policy of favoring the maintenance of class actions. *See King v. Kansas City S. Indus., Inc.*, 519 F.2d 20, 25–26 (7th Cir.1975); *In re Gen. Motors Corp. Dex–Cool Prods. Liab. Litig.*, 241 F.R.D. 305, 311

(S.D.Ill.2007); *see also Toothman v. Freeborn & Peters, supra*, 80 P.3d at 809.

In making a Rule 23 determination, a court does not inquire into the merits of the lawsuit. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974); *Medina v. Conseco Annuity Assurance Co., supra*, 121 P.3d at 348. However, depending on whether the issues are "plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, ... sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *see Medina v. Conseco Annuity Assurance Co., supra*, 121 P.3d at 348 (it is often necessary to consider the substantive claims and defenses of the parties and the essential elements of those claims and defenses).

"[T]here can be no doubt that it is proper for a district court, prior to certification of a class, to allow discovery and to conduct hearings to determine whether the prerequisites of Rule 23 are satisfied." *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571 (2d Cir.1982). A preliminary hearing, addressed not to the merits of the plaintiff's individual claim, but to whether he or she is asserting a claim that, assuming its merit, will satisfy the requirements of Rule 23, is not violative of the rule stated in *Eisen*. *Sirota v. Solitron Devices, Inc., supra*, 673 F.2d at 571 ("Indeed a district court may be reversed for premature certification if it has failed to develop a sufficient evidentiary record from which to conclude that the requirements of numerosity, typicality, commonality of question, and adequacy of representation have been met.").

### III. Class Certification Analysis

We now turn to the merits of plaintiffs' contention that the district court erred in denying their motion for class certification.

### A. C.R.C.P. 23(a)

Plaintiffs first contend the district court erred in denying class certification pursuant to C.R.C.P. 23(a). We agree in part.

#### 1. Numerosity

Plaintiffs contend that the district court erred by concluding they had not met their burden of establishing numerosity, pursuant to C.R.C.P. 23(a)(1). We disagree as to LaBerenz and the putative insured class members but agree as to Dr. Gibson and the putative health care provider class members.

A party seeking class certification is required to establish by competent evidence that the class is sufficiently large to render joinder impracticable. *Kniffin v. Colo. W. Dev. Co.*, 622 P.2d 586, 592 (Colo. App.1980). "The actual size of the defined class is a significant factor in such determination, and mere speculation as to size is insufficient." *Kniffin v. Colo. W. Dev. Co., supra*, 622 P.2d at 592 (trial court erred in certifying class action claim where there was no evidence as to size of the defined class or that joinder was impracticable). However, the class does not have to be so ascertainable that every potential member can be identified at the commencement of the action. *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 382 (D.Colo.1993). The description of the class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Cook v. Rockwell Int'l Corp., supra*, 151 F.R.D. at 382. "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Cook v. Rockwell Int'l Corp., supra*, 151 F.R.D. at 384 (quoting *Gen. Tel. Co. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319 (1980)).

In determining whether the numerosity requirement is met, a court may consider reasonable inferences that can be drawn from the facts before it. *See Garcia v. Rush–Presbyterian–St. Luke's Med. Ctr.*, 80 F.R.D. 254, 267 (N.D.Ill.1978). In that regard, the numerosity requirement is satisfied where the exact size of the class is

unknown but general knowledge and common sense indicate that it is large. *See Olden v. LaFarge Corp.,* 203 F.R.D. 254, 269 (E.D.Mich.2001), *aff'd,* 383 F.3d 495 (6th Cir. 2004); *Civic Ass'n of Deaf, Inc. v. Giuliani,* 915 F.Supp. 622, 632 (S.D.N.Y.1996)(court may make "common sense assumptions" to support a finding of numerosity); Alba Conte & Herbert *Newberg, Newberg on Class Actions* § 3:3, at 225 (4th ed.2002) ("a common sense approach is contemplated by Rule 23").

With respect to numerosity, the district court concluded as follows:

> Rule 23(a)(1) requires a class of plaintiffs so numerous that joinder is impractical. Here, Plaintiffs assert that the numerosity requirement is satisfied based upon American Family's acknowledgement in their discovery responses that it "averages repricing over 16,000 bills per year based upon geo-zips".... However, a class may not be defined with a "fail-safe" provision that requires a resolution of the liability issue to determine who is in and is not included within the class. In the instant case, an ultimate liability issue is whether, in repricing all or a portion of the 16,000 bills per year through its database system, American Family provided payment on claims that was below what is reasonable for the service provided. Plaintiff[s']numerosity assertion, however, presupposes in the first instance that all (or a substantial portion) of the repriced bills are per se unreasonable based upon American Family's use of its computer database. Moreover, the proposed class definition focuses exclusively upon the initiation of the claims-adjustment process and fails to take into consideration which of the proposed class members, if any, suffered damages as a result of the repricing, such as to state a cognizable claim. Based upon the proposed class definition, it is therefore impossible at the outset to objectively determine which, and how many, individuals are included within the proposed class. As such, the Court cannot conclude that the class sought to be certified is so numerous that joinder would be impractical. The Court accordingly concludes that Plaintiff[s] have failed to demonstrate numerosity as required by Rule 23(a)(1).

Plaintiffs contend that, because during the proposed class period over 56,000 bills were initially repriced by American Family under Explanation Code 41, joinder of every provider and insured affected by such repricing would be impracticable. American Family contends that plaintiffs' class definition is overly broad, which impacts the numerosity analysis. Specifically, American Family argues that, because the record does not establish that all members of the proposed class were injured and could state a cognizable claim for damages, the district court did not abuse its discretion in deciding that it was impossible to determine objectively which and how many individuals should be included in the proposed class.

As to the insured class members, we agree with American Family that the district court did not abuse its discretion in ruling that plaintiffs failed to satisfy their burden of establishing numerosity under C.R.C.P. 23(a)(1). However, we agree with plaintiffs that numerosity was established as to the health care provider class members.

▉▉▉▉ Initially, we reject the district court's analysis that the proposed class, as defined by plaintiffs, is a "fail-safe" class because it presumes liability on the part of American Family. In a "fail-safe" class, the "proposed class definition is in essence framed as a legal conclusion." *Indiana State Employees Ass'n v. Indiana State Highway Comm'n,* 78 F.R.D. 724, 725 (S.D.Ind.1978). A "fail-safe" class is bound only by a judgment favorable to the plaintiffs, but not by an adverse judgment. *See Intratex Gas Co. v. Beeson,* 22 S.W.3d 398, 402 (Tex.2000). "If the defendant is found liable, class membership is then ascertainable and the litigation comes to an end. A determination that the defendant is not liable, however, obviates the class, thereby precluding the proposed class members from being bound by the judgment." *Intratex Gas Co. v. Beeson, supra,* 22 S.W.3d at 405.

A proposed class definition that rests on the paramount liability question cannot be objective, nor can the class members be presently ascertained; when the class definition is framed as a legal conclusion, the

trial court has no way of ascertaining whether a given person is a member of the class until a determination of ultimate liability as to that person is made.

*Intratex Gas Co. v. Beeson, supra,* 22 S.W.3d at 404. Where a decision on the merits of a person's claim is needed to determine whether a person is a member of a class, the proposed class action is unmanageable virtually by definition. *Kenro, Inc. v. Fax Daily, Inc.,* 962 F.Supp. 1162, 1169 (S.D.Ind.1997); *see Adashunas v. Negley,* 626 F.2d 600, 604 (7th Cir.1980)(holding that the trial court properly denied certification of a proposed class of children with improperly identified learning disabilities who were not receiving special education, as the class would be "fail-safe"); *Hagen v. City of Winnemucca,* 108 F.R.D. 61, 63 (D.Nev.1985) (finding certification inappropriate for a class defined to consist of all persons whose constitutional rights had been violated by city's prostitution policies); *Capital One Bank v. Rollins,* 106 S.W.3d 286, 293 (Tex.App.2003) (impermissible "fail-safe" class where definition of the class included all past and present Capital One Bank credit card holders with a customer agreement that provided for the assessment of an over-limit fee but did not expressly specify that this over-limit fee would be assessed for each billing period, because this definition required the trial court to interpret the contract and make a legal determination).

In all the cases cited above, the proposed class definition used terms that required a decision on the merits before membership in the class could be ascertained. Here, by contrast, the proposed class is not framed as a legal conclusion, but in more neutral terms as insureds whose non-PPO, PIP-related medical services were paid under Explanation Code 41 and health care providers whose medical bills were reduced under Explanation Code 41. Accordingly, we conclude that the "fail-safe" concept is inapplicable here.

We thus turn to the district court's alternative rationale that determining how many persons are included in the putative class, as defined by plaintiffs, is impossible because "the proposed class definition focuses exclusively upon the initiation of the claims adjustment process and fails to take into consider-

ation which of the proposed class members, if any, suffered damages as a result of the repricing, such as to state a cognizable claim."

■ To be members of a class, individuals must have been injured or suffered damage. *See McElhaney v. Eli Lilly & Co.,* 93 F.R.D. 875, 878 (D.S.D.1982)("The definition of a class cannot be so broad as to include individuals who are without standing to maintain the action on their own behalf. Each class member must have standing to bring the suit in his own right."). Any class members who suffered no damage would have no claim and would not properly belong in the class. *See San Antonio Tel. Co. v. Am. Tel. & Tel. Co.,* 68 F.R.D. 435, 438 (W.D.Tex. 1975)(a monopoly, although against public policy, does not necessarily cause damage to an individual, and for a class action to be certified, each individual member of the class must necessarily suffer damage). *But see Cook v. Rockwell Int'l Corp., supra,* 151 F.R.D. at 384 (the fact that classes may initially include persons who do not have claims is not important unless it can be shown that most, if not all, of the potential class members have no claims to be asserted by the class representatives).

We are not persuaded by plaintiffs' argument that, because they alleged a claim for declaratory relief, they do not have to establish that putative class members were damaged by American Family's repricing system. To the contrary, we agree with American Family that none of the causes of action asserted in plaintiffs' amended complaint is cognizable in the absence of damages.

■ We acknowledge that claims for declaratory judgment may, in appropriate cases, be handled by a class action. *See State v. Buckley Powder Co., supra,* 945 P.2d at 844; *Goebel v. Colo. Dep't of Insts., supra,* 764 P.2d at 795 (class action may be certified under C.R.C.P. 23(b)(2) when the relief sought is primarily injunctive or declaratory, but not when the primary claim is for damages).

Here, however, the action is primarily one for money damages. Five of the six causes of action specifically allege that, as a result of

American Family's actions, plaintiffs and class members incurred damages. Even with respect to plaintiffs' first cause of action for declaratory relief, the prayer requests a declaration that "American Family is obligated to provide coverage for all reasonable charges for the PIP-related treatment obtained by LaBerenz and the class," thus indicating that claim is seeking monetary recovery for the class as well. *See Brooks v. Educators Mut. Life Ins. Co., supra,* 206 F.R.D. 96, 104 (E.D.Pa.2002) (noting that the class could not properly be certified under Rule 23(b)(2) because the class primarily sought money damages).

Accordingly, notwithstanding the fact that plaintiffs have alleged a claim for declaratory relief, we conclude that, although it may not have been necessary at the class certification stage to show the amount of damages sustained by each putative class member, it was necessary for plaintiffs to show that all putative class members were damaged by American Family's action.

■■■ Based on the evidence in the record, we agree with the district court that plaintiffs did not meet their burden of proving numerosity as to the putative insured class members. *See Ammons v. Am. Family Mut. Ins. Co., supra,* 897 P.2d at 862. As discussed above, plaintiffs rely solely on the some 56,000 reduced bills to infer the class is so numerous that joinder of all class members would be impracticable.

However, American Family adduced evidence, which is undisputed in the record, showing that under its claims review system, the goal was to protect an insured from having to pay *any* amount to the provider. According to the testimony proffered by American Family, if the provider insisted on payment of the bill in full or indicated it would pursue collection of the balance from the insured, American Family would ultimately pay the entire bill.

Thus, based on the record, some undefined but presumably large number of putative insured class members suffered no damages or injury, because either their providers did not pursue collection, or if such action occurred, their medical bills were then fully paid by American Family. Applying a common sense approach to the reasonable inferences to be drawn from the evidence in the record, the number of insureds who actually suffered any damage is likely very small.

Thus, we conclude the trial court did not abuse its discretion in ruling that plaintiffs produced no evidence to permit a conclusion that joinder of all insured class members was impracticable, and, accordingly, failed to sustain their burden of establishing numerosity pursuant to C.R.C.P. 23(a)(1). *See Kniffin v. Colo. W. Dev. Co., supra,* 622 P.2d at 592; *Fisher v. United States,* 69 Fed.Cl. 193, 198 (2006) (plaintiff's assertion, that if only one-half of one percent of a potential 50,000,000 policyholders filed refund claims, there would be a class of 250,000 claimants, was pure speculation and failed to satisfy Rule 23(a)(1) ). *But see Brooks v. Educators Mut. Life Ins. Co., supra,* 206 F.R.D. at 101 (although actual numbers of class members were unknown in an insurance repricing case, and plaintiffs alleged that it could be hundreds or thousands of insureds, numerosity was not disputed by defendants, and so the trial court found the numerosity requirement was satisfied).

■■■ We reach a different conclusion, however, as to the provider members of the class. Again applying a common sense approach to the record, we conclude that the numerosity requirement was met as to the providers. *See Olden v. LaFarge Corp., supra,* 203 F.R.D. at 269.

It is clear from the record that American Family established the procedures at issue here to reduce the amount it pays outside of its PPO network. If most outside providers contested Explanation Code 41 reductions and American Family ultimately paid all such bills in full, American Family would not save any money in the long run and would incur substantial administrative expenses. Thus, common sense compels the conclusion that a sufficiently large number of providers suffered damages because their reduced bills were never paid in full.

Accordingly, we conclude the trial court abused its discretion by not distinguishing between the insured and provider members of the class with respect to the numerosity

requirement under C.R.C.P. 23(a)(1). *See Goebel v. Colo. Dep't of Insts., supra*, 764 P.2d at 794; *see also Van Buren Sch. Dist. v. Jones*, 365 Ark. 610, ——, 232 S.W.3d 444, 450 (2006)(applying common sense analysis, "where the numerosity question is a close one, the balance should be struck in favor of a finding of numerosity in light of the trial court's option to later decertify" (quoting *Lenders Title Co. v. Chandler*, 358 Ark. 66, 73, 186 S.W.3d 695, 699 (2004)) ); *see also* C.R.C.P. 23(c)(1) (a class certification order may be conditional, and may be altered or amended before a decision on the merits of the case).

Because of our conclusion that the district court improperly applied the "fail safe" concept in its numerosity analysis, we need not consider plaintiffs' contention that the district court's order is based on the assumption that, at trial, American Family would be able to present evidence on a case-by-case basis as to whether the amounts of each individual's medical bills were reasonable, based on information and facts not considered by American Family at the time the bills were repriced under Explanation Code 41. Further, as to the district court's alternative ruling on numerosity, we perceive no such assumption, one way or the other. Rather, the central issue addressed by the district court's alternative ruling is that plaintiffs could not demonstrate numerosity of the proposed class because American Family's individualized claim review process resulted in an undetermined number of potential class members suffering no losses or damages at all. As discussed above, we agree with the court's ruling as to the insured members of the class but disagree as to the provider members of the class.

## 2. Commonality

Plaintiffs also contend the district court erred in finding that they had not met their burden of establishing that there are questions of law or fact common to the class, pursuant to C.R.C.P. 23(a)(2).

■■ "The second prerequisite to class certification is that there must be issues of law or fact common to the class." *Joseph v. Gen. Motors Corp.*, 109 F.R.D. 635, 639

(D.Colo.1986). This does not mean, however, that every issue must be common to the class. *Joseph v. Gen. Motors Corp., supra*, 109 F.R.D. at 639. "It is to be recognized that there may be varying fact situations among individual members of the class and this is all right as long as the claims of the plaintiffs and other class members are based on the same legal or remedial theory." *Joseph v. Gen. Motors Corp., supra*, 109 F.R.D. at 639–40 (quoting *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1189 (10th Cir.1975)).

While combining the arguments concerning commonality and typicality, American Family concedes that there are a number of common legal issues here, although it argues that, under C.R.C.P. 23(b), common issues would not predominate. *See Brooks v. Educators Mut. Life Ins. Co., supra*, 206 F.R.D. at 101–02 (individualized issues are a factor in determining commonality, but are more appropriately addressed under Rule 23(b)(3) predominance).

Accordingly, for our purposes, we need not further consider commonality and will, instead, address the parties' arguments under the typicality rubric. *See Armstrong v. Chicago Park Dist.*, 117 F.R.D. 623, 629 (N.D.Ill. 1987).

## 3. Typicality

■■■ Pursuant to C.R.C.P. 23(a)(3) [t]ypicality requires that the class representative claims be typical of the class and that the class claims are encompassed by the named plaintiffs' claims. This requirement is usually met "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented … irrespective of varying fact patterns which underlie individual claims."

*Ammons v. Am. Family Mut. Ins. Co., supra*, 897 P.2d at 863 (quoting 1 H. Newberg, *Newberg on Class Actions* § 3–13, at 3–77 (3d ed.1992) ). "However, if the named plaintiffs have considerations that are unique and which may be dispositive, class certification may be denied." *Ammons v. Am. Family Mut. Ins. Co., supra*, 897 P.2d at 863; *see Armstrong v. Chicago Park Dist., supra*, 117

F.R.D. at 629 ("a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members" (quoting *E. Texas Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977)) ).

On the issue of typicality, the district court ruled in pertinent part:

> Here, Plaintiff[s']assertion that American Family improperly repriced claims based upon a[n] automated, databased system, is a common and typical legal issue among the individuals in the proposed class. However, as set forth in American Family's response, there are numerous individual factual and legal issues unique to this case which will not be typical or common to members of the proposed class.... In addition, as recognized by the court in *Ammons,* the claims for breach of contract, willful and wanton failure to pay insurance benefits and exemplary damages are, "of necessity, highly individualized as to both the plaintiff and defendant insurance company with respect to both liability and amount." As in *Ammons,* the Court concludes that Plaintiff's claims raise highly individualized issues as to Plaintiffs, prospective class members, and American Family with respect to liability as well as damages. Accordingly, the Court concludes that Plaintiffs have failed to establish the commonality and typicality requirement required by Rule 23(a)(2) and (3).

Because we have concluded the trial court properly denied class certification on grounds of numerosity as to the insured class members, we need not consider the typicality requirement as to those members of the putative class.

■ As to the provider members of the class, and for reasons similar to those discussed above concerning numerosity, we also conclude that, with respect to Gibson, the district court abused its discretion in ruling that typicality was not established pursuant to C.R.C.P. 23(a)(3). Gibson's claims are typical of all provider members of the proposed class who suffered damages because their bills, initially reduced under Explana-

tion Code 41, were not paid in full. *See Kuhn v. State, supra,* 817 P.2d at 106 (the fact that each class member would be owed a different tax refund amount would not defeat typicality). *But see Ammons v. Am. Family Mut. Ins. Co., supra,* 897 P.2d at 863–64 (costs of transportation were not typical because they varied with each prospective class member, and reasonableness would vary with the particular circumstances).

### 4. Adequacy

Because of our resolution of this matter, on remand, the district court should consider and make findings on the issue of adequacy, as it relates to Dr. Gibson and the provider members of the class, pursuant to C.R.C.P. 23(a)(4).

### B. C.R.C.P. 23(b)

Because we affirm the district court's denial of class certification under C.R.C.P. 23(a)(1) as it relates to the insured class members, we need not address the requirements of C.R.C.P. 23(b) as to that segment of the proposed class.

On remand, the trial court should consider and make findings whether this action meets the requirements of C.R.C.P. 23(b) as to the provider segment of the class.

Further, on remand, the district court, in its discretion, may consider the issues under C.R.C.P. 23(a)(4) and 23(b) on the existing record or allow the parties to conduct such additional discovery and present such additional evidence on these issues as it deems appropriate.

The order is affirmed as to the insured class members but reversed as to the provider class members, and the case is remanded for further proceedings consistent with this opinion.

Judge WEBB and Judge RUSSEL concur.