THISTLE, INC., a Colorado corporation, Plaintiff–Appellant,

v.

TENNECO, INC., a Delaware corporation, Tenneco Oil Company, a Delaware corporation, TOC—Gulf Coast, Inc., a Delaware corporation, TOC—Rocky Mountains Inc., a Delaware corporation, TOC—Mid–Continent, Inc., a Delaware corporation, Amoco Production Company, a Delaware corporation, Fina Oil & Chemical Company, a Delaware corporation, and Mesa Mid–Continent Limited Partnership, a Delaware limited partnership, Defendants–Appellees.

No. 92CA1678.

Colorado Court of Appeals, Div. IV.

Oct. 21, 1993.

Rehearing Denied Dec. 2, 1993.

Certiorari Denied May 2, 1994.

Murray Thompson & Lewis, P.C., O. Russel Murray, Curtis R. Henry, Denver, for plaintiff-appellant.

Ireland, Stapleton, Pryor & Pascoe, P.C., Tucker K. Trautman, Polly A. Atkinson, Rebecca B. DeCook, Denver, for defendants-appellees Tenneco, Inc. and Tenneco Oil Co.

Corporon, Hoehn, Svitavsky, Vaughters & Eyler, Vern R. Corporon, Englewood, for

defendants-appellees TOC—Gulf Coast, Inc. and Fina Oil & Chemical Co.

Davis, Graham & Stubbs, David R. Hammond, Denver, for defendants-appellees TOC—Rocky Mountains, Inc. and Amoco Production Co.

Baker & Hostetler, Timothy R. Beyer, Thomas B. Evans, Denver, for defendants-appellees TOC—Mid–Continent, Inc. and Mesa Mid–Continent Ltd. Partnership.

Opinion by Judge CRISWELL.

The district court entered summary judgment dismissing the claims of plaintiff, Thistle, Inc., against Tenneco, Inc., Tenneco Oil Co. (collectively, Tenneco), and the other named defendants, which claims were based upon allegations that Tenneco had improperly made available to the other defendants certain seismic information which was owned by Thistle. Thistle's appeal from that judgment presents the general issue whether Thistle, as the assignee of the previous owners' right, title, and interest in such information, is the real party in interest to enforce various licensing agreements between Tenneco and those previous owners relating to such information. We hold that the various assignments received by Thistle carried with them all of the previous owners' interest in the various licensing agreements, including the right to assert any claims for relief in existence at the time of such assignments. Hence, we reverse the judgment of the district court and remand the cause to it for further proceedings.

Seismic information of the type involved here is obtained by sending shock waves through the earth and recording and processing the resulting data. Such information can be used in locating underground geologic formations that may contain oil or gas. The information obtained from measuring this seismic activity is not commonly available and, therefore, possesses a marketable value. Here, Thistle in five separate transactions acquired ownership of seismic data respecting five different geologic areas. In each case, the predecessor in title to the data had entered into a licensing agreement with Tenneco. Each agreement authorized Tenneco to make use of the data only for its own internal purposes and specifically prohibited it from transferring the data or making it available to any third person.

From the information submitted to the trial court, it appears that in late 1988 Tenneco established three subsidiary corporations and transferred to those subsidiaries the assets, including the subject seismic data, that had previously been used by three of its unincorporated divisions. The stock in each of these corporations was then sold to three, unassociated third parties. The seismic data that was subject to the previous licensing agreements, therefore, was made available both to the three new corporations and to the purchasers of their stock.

Thistle's acquisition of title to the seismic information respecting the five areas in some cases preceded, and in others followed, Tenneco's sale of its subsidiaries' stock. The transfer of title to Thistle occurred prior to Tenneco's stock sale in three instances (in the so-called "Sefel I," "Mincomp," and "Sefel II" transactions), but after such sale in two instances (in the "Neotech" and the "Pendleton" transactions).

In four instances, the documents transferring title to the data contained similar language of assignment. Thus, in the Sefel I transaction, it was "all of the Vendor's right, title, and interest in and to the seismic data" that was transferred; in the Sefel II transaction, Thistle obtained "all of [the seller's] right, title, interest and benefits, past, present and future" in the data; in the Neotech transaction, the seller transferred to Thistle "all of Seller's interest"; and in the Pendleton transaction, Thistle obtained "all rights, title and interest [the seller] has in and to all of the Seismic Data."

Thistle's title to the data respecting the fifth area was obtained from a trustee in bankruptcy (the Mincomp transaction). In this transaction, the trustee transferred "all of the so-called 'SPEC DATA,'" but specifically noted that the transfer "does *not* include any any [sic] choses in action (except any litigation rights which may attach to any of the assets being sold such as the SPEC data) ... licenses, litigation rights or any-

thing else not specifically included." (original emphasis)

Thistle's complaint named Tenneco, its three former subsidiaries, and the three purchasers of the stock of the subsidiaries as defendants. Alleging its ownership of the five series of seismic data, Thistle claimed that Tenneco had breached each of the licensing agreements respecting such data by transferring the data to its subsidiaries. In addition, it alleged that Tenneco and all of the other defendants had been unjustly enriched, had misappropriated and stolen trade secrets, had engaged in a civil conspiracy, and had intentionally interfered with Thistle's prospective business advantage.

In response to this complaint, defendants asserted that, because none of the documents transferring title to the seismic data to Thistle had expressly transferred the rights of the owner under the licensing agreement or any chose in action relating thereto, Thistle was not the real party in interest under C.R.C.P. 17(a). The trial court agreed and entered judgment dismissing plaintiff's complaint.

I.

The Pendleton transaction originally closed in December 1989, after Tenneco had sold the stock in its three subsidiaries. In June 1992, however, nearly two years after Thistle filed its complaint in this case, it received a "Corrective Bill of Sale" transferring to it "any of the Seller's right, title and interest in the seismic data ... including, but not limited to, Seller's right, title and interest in any license agreements covering such seismic data and choses in action, past, present and future, with respect to such seismic data and license agreements...."

Because of the execution of this "corrective" bill of sale by the previous owner, Thistle's right to pursue a claim based upon an alleged violation of the Pendleton licensing agreement stands upon a somewhat different footing than its right to pursue such a claim in the other four instances.

There is no dispute but that an assignee of a claim is a real party in interest under C.R.C.P. 17(a) and, therefore, may institute an action in his or her own name upon that claim. See *Home Insurance Co. v. Atchison, Topeka & Santa Fe R. Co.*, 19 Colo. 46, 34 P. 281 (1893).

■ Further, even if there has been no assignment of the claim at the time suit is instituted, if the plaintiff is assigned the claim at some time prior to trial, such assignment is sufficient to make the plaintiff a real party in interest. *Kilbourn v. Western Surety Co.*, 187 F.2d 567 (10th Cir.1951) (under Colorado law, plaintiff was real party in interest even though the written assignment was not executed until after suit was instituted). See *Bassett v. Inman*, 7 Colo. 270, 3 P. 383 (1883). *Cf. Alpine Associates, Inc. v. KP & R, Inc.*, 802 P.2d 1119 (Colo.App.1990) (plaintiff corporation, which was not in existence at time of institution of suit, was not real party in interest where no assignment of claim was made until some time after receipt of jury verdicts).

■ Here, the original transfer document in the Pendleton transaction assigned to Thistle "all rights, title and interest" in the respective seismic data. Although that document made no specific reference to Tenneco's license agreement, the later corrective bill of sale, executed after Thistle commenced suit, made clear that such transfer included any interest in that licensing agreement and any chose in action related to that agreement. This later document, therefore, specifically granted to Thistle the right to enforce that agreement.

If the corrective bill of sale is looked upon only as a clarification of the parties' original intent, it is unimportant, as Tenneco argues and as the trial court found, that it is "self-serving." Neither Tenneco nor any of the other defendants were parties to the sale agreement between the data's previous owner and Thistle. Hence, if the two parties to that sale undisputedly agree as to the meaning of their original agreement, as the bill of sale establishes that they do, Tenneco is in no position to assert that the parties to that agreement possessed some other intent.

Alternatively, even if the corrective bill of sale is looked upon as an *additional* assignment, rather than as a clarification of the

parties' intent reflected in the original assignment, because that bill of sale expressly transferred to Thistle the right to pursue any claim, past, present, or future, arising under the licensing agreement, Thistle demonstrated that it was the real party in interest with respect to any claim relating to the Pendleton transaction data. *See Kilbourn v. Western Surety Co., supra.*

## II.

██ Thistle received title to the data transferred in the Sefel I, Sefel II, and Neotech transactions by means of documents assigning all of the respective seller's right, title, and interest in the data to Thistle, but making no express reference to the pertinent licensing agreements or to any claims that might arise from those agreements. At the same time, the documents contained no language reserving any interest in the data or otherwise limiting Thistle's ownership rights in such data. Hence, the issue presented by these transactions is whether the assignment of all ownership rights in intangible personal property, without any express assignment of the right to enforce the terms of any agreement respecting that property, but also without any express limitation upon the interests transferred, assigns such right to the buyer.

██ We hold that, absent some express reservation or limitation upon the interest transferred, or some other evidence of a contrary intent to be found within the transferring document, an assignment of all of an owner's right, title, and interest in intangible personal property includes an assignment of any agreement respecting that property to the extent that such agreement benefits the transferee because of his or her ownership of the property.

We are unaware of any appellate decision directly addressing the issue presented, and consequently, the prior Colorado opinions relied upon by the parties are not persuasive with respect to any party's assertions here.

In *Huston v. Ohio & Colorado Smelting & Refining Co.,* 63 Colo. 152, 165 P. 251 (1917), for example, the court held that a claim for fraud by the purchaser of corporate stock was not assigned when the original purchaser sold that stock. The basis for the decision, however, is that a claim for fraud is a personal right that generally does not pass with an assignment of the property to which the fraud claim might relate. *Cf. Refining, Inc. v. Sharples Specialty Co.,* 21 F.Supp. 511 (D.Del.1937) (rule that fraud claim cannot be assigned inapplicable if it is expressly assigned in conjunction with the assignment of patent rights to which it is incidental). In contrast, any rights created by the licensing agreements here did not involve unassignable personal rights; to the extent that those agreements created any rights, they related to interests in property.

Likewise, in both *National Advertising Co. v. Sayers,* 144 Colo. 356, 356 P.2d 483 (1960) and *Alpine Associates, Inc. v. KP & R, Inc., supra,* the plaintiff, although challenged upon the point, simply failed to present any evidence of its right to maintain the action. In addition, in *National Advertising,* only a sale of corporate stock occurred. Hence, because a corporation is a legal entity separate from its stockholders, such sale of stock could not have had the effect of assigning to the new stockholders a claim possessed by the corporation itself.

Nor is the federal court's opinion in *Regents v. K.D.I. Precision Products, Inc.,* 488 F.2d 261 (10th Cir.1973) in point. There, a research and development contract provided that, in return for certain remuneration, the University of Colorado agreed to transfer to the sponsoring organization all of its right, title, and interest in each invention conceived or reduced to practice during the course of the research and development program. The University conceded that this agreement extended to any patent, *or any right* concerning such patent, resulting from the research. It argued, however, and the court agreed, that it was not obligated to transfer title to certain equipment used in the program that had been given to it by third parties; such equipment was simply not included in the parties' express description of the nature of the personal property to be transferred.

Similarly, we do not consider the decision in *Robinson v. Kamens,* 664 F.Supp. 118 (S.D.N.Y.1987) to be persuasive. The opin-

ion in that case does not make the operative facts clear. It appears, however, that, after executing an assignment for collection purposes (which plaintiff claimed was induced by fraud), plaintiff entered into a contract to acquire title to a pre-Colombian mask that was the subject matter of the previous assignment. Applying New York law, the court held that both plaintiff and her assignee were the real parties in interest with respect to the replevin claim asserted by plaintiff, but that the previous assignment did not transfer any interest in the contract negotiated by plaintiff after the assignment's execution.

■ It is true that, as a general rule, the assignment of a copyright governed by federal law does not transfer to the assignee any claim based upon a *previous* infringement upon that claim, absent an express assignment of that claim. *DeSilva Construction Corp. v. Herrald,* 213 F.Supp. 184 (M.D.Fla. 1962). Even if a like rule were applied here, however, it would not prevent Thistle from prosecuting a claim based upon Tenneco's violation of its license agreement after Thistle became the owner of the data transferred to it.

Perhaps the factual circumstances most analogous to those here are reported in *Portland Baseball Club v. Kuhn,* 368 F.Supp. 1004 (D.Ore.1971), *aff'd,* 491 F.2d 1101 (9th Cir.1974). There, a minor league baseball club owner, after receiving an arbitration award for compensation from the major leagues for infringement upon the club's territory, sold "all its right, title and interest" in the club, but reserved its right to continue to receive the compensation payable under the award. Thereafter, it sued the major leagues for further compensation, asserting that the previous award was tainted. In dismissing this suit, the federal court held that the transfer of all of the owner's interest in the club assigned to the buyer all right to compensation due as a result of that ownership, except the right under the specific award that was specifically reserved. Hence, because the right to any further compensation was a right of present ownership which had not been reserved, the previous owner

had by its sale of the club divested itself of any right to such income.

Another situation also analogous to the instant circumstances arises when a grantee is conveyed fee simple title to real property that is subject to a pre-existing lease. In such instances, the transferee acquires the right to enforce any obligation of the tenant that benefits the transferee as an owner of the real property that is the subject of the lease. *See generally* Restatement (Second) of Property § 16.2(2) and comment c (1977). *See also Fidelity Bond & Mortgage Co. v. Paul,* 90 Colo. 94, 6 P.2d 462 (1931); *White v. Short,* 794 P.2d 1110 (Colo.App.1990).

We conclude that a similar rule should be applied here. The right to control the persons who have access to seismic data is necessarily an incidental attribute of the right of ownership of that data. Indeed, without the right to such control, the right of ownership would be meaningless. Hence, in the three transactions under consideration here, when Thistle was assigned all of the owner's interest in the data, without restriction or reservation, such assignment necessarily included the assignment of the license agreement and any existing or future claim based upon Tenneco's violation of that agreement. Tenneco's obligation not to disclose the data to third parties was of benefit only to the owner of the data, and as such owner, Thistle was entitled to receive such benefit. *See* Restatement (Second) of Property, *supra; Vance v. Casebolt,* 841 P.2d 394 (Colo.App.1992) (indenture trustee having security interest in all personal property entitled to exercise rights under license agreement).

### III.

■ Unlike the three assignments described in part II, the assignment from the trustee in the Mincomp transaction made specific reference to "choses in action"; it said that the assignment did not include any chose in action, "except any litigation rights which may attach to the assets being sold such as the SPEC data." It also noted that the sale did not include any "licenses."

The evidence before the trial court was that Thistle acquired the data from the trust-

ee as a result of a "joint bid" by Thistle and another party. Under the agreement governing this joint bid, Thistle was to receive "whatever rights [the bankrupt] has in the seismic data," while the other party was to receive certain "computer assets." It provided that the bid was to be made in the other party's name, but "jointly for [it] and Thistle."

Based upon the terms of this bid agreement, the trial court held that, if the trustee transferred any litigation rights to the other joint bidder, it is "likely they stayed with" that other bidder, rather than being transferred to Thistle. Before us, however, defendants concede that "all of [the other joint bidder's] right, title and interest in and to" the pertinent data was transferred to Thistle. They argue, nevertheless, that the rights transferred to that other joint bidder did not include any rights to enforce the license agreement. We disagree.

We have previously determined that the assignment of all of a party's right, title, and interest in intangible personal property, without reservation, constitutes an assignment of an existing agreement, such as a license, affecting that property. Therefore, if the trustee's assignment to the other joint bidder included rights under the license agreement, Thistle received such rights when the other bidder transferred all of its interest in the data to Thistle.

Further, we conclude that the trustee's assignment included an assignment of the pertinent licensing agreement and any claim based upon a violation of that agreement that then existed.

The trustee's assignment included not only all of his interest in the pertinent seismic data, but also "any litigation rights which may attach" to that data. This provision does not limit the nature of the title being assigned; on the contrary, it confirms the breadth of the interest transferred.

In addition, the term "licenses" in this assignment refers to licenses held by the trustee, which would constitute additional assets, not to licenses previously granted by him or the debtor, which would constitute encumbrances upon the trustee's property.

We conclude, therefore, that the trustee's assignment of his interest in the seismic data included his interest in the license agreement, which was later assigned to Thistle by the joint bidder.

## IV.

In addition to alleging that Tenneco had violated the various licensing agreements, Thistle also asserted claims against the other defendants based upon a conspiracy to misappropriate trade secrets and intentionally to interfere with Thistle's business advantage. In dismissing Thistle's claims against Tenneco, the trial court also dismissed these claims against the other defendants.

Because we have concluded that Thistle is the real party in interest to pursue its contract violations claims, it necessarily follows that Thistle has standing to pursue these tort claims against the other defendants.

The judgment of the district is reversed, and the cause is remanded to that trial court for further proceedings consistent with the views contained in this opinion.

PLANK and RULAND, JJ., concur.