**Pauline REYHER and Dr. Wallace Brucker, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Defendant–Appellee.**

**Nos. 08CA2021, 09CA0080.**

Colorado Court of Appeals,
Div. VI.

Dec. 24, 2009.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2009.

The Carey Law Firm, Robert B. Carey, Leif Garrison, Craig Valentine, Colorado Springs, Colorado; Hagens Berman, LLP, Steve W. Berman, R. Brent Walton, Seattle, Washington; Todd A. Travis, P.C., Todd A. Travis, Englewood, Colorado; Law Office of John Gehlhausen, John Gehlhausen, Lamar, Colorado, for Plaintiffs–Appellants.

Faegre & Benson LLP, Michael S. McCarthy, Todd P. Walker, Sarah A. Mastalir, Denver, Colorado; Mendenhall & Malouff, R.L.L.P., H. Barton Mendenhall, II, Rocky Ford, Colorado, for Defendant–Appellee.

Opinion by Judge HAWTHORNE.

In this action concerning the payment of medical bills under the Colorado Automobile Accident Reparations Act (No–Fault Act), plaintiffs, Pauline Reyher and Dr. Wallace Brucker, appeal the trial court's four separate orders (1) dismissing Reyher's claims because she lacks standing, (2) denying plaintiffs' motion for class certification, (3) denying plaintiffs' motion to compel certain discovery and granting a protective order to defendant, State Farm Mutual Automobile Insurance Company, and (4) finding that Dr. Brucker spoliated evidence. We reverse the order dismissing Reyher's claims for lack of standing, but remand for proceedings to determine Dr. Brucker's standing. We also reverse the order denying plaintiffs' motion for class certification, and we do not address the orders regarding discovery and spoliation.

## I. Facts

In October 2001, Reyher was injured in an automobile accident and required medical treatment. At the time, she was insured under a no-fault insurance policy issued by State Farm. The policy was governed by section 10–4–706(1)(b) of the No–Fault Act, which required insurers to pay for their insured "all reasonable and necessary expenses for medical ... services" related to covered automobile accidents. Ch. 303, sec. 5, § 10–4–706(1)(b), 1984 Colo. Sess. Laws 1071 (formerly codified as amended at § 10–4–706(1)(b); repealed effective July 1, 2003, ch. 189, sec. 2, § 10–4–726, 2002 Colo. Sess. Laws 649).

Shortly after her accident, State Farm notified Reyher that "[t]o determine [the] reasonable and necessary amount [for the treatment], [it] would compare [her] provider's charges to a Medicode database through the Sloans Lake AIM [Auto Injury Management] program." According to State Farm, the database compared "charges for the same or like services in the specific geographical area where the service was performed" and "identifie[d] those bills that exceed the 90th percentile of charges for similar services in the provider's geographical area."

Reyher subsequently received treatment from Dr. Brucker, a salaried independent contractor of the Arkansas Valley Regional Medical Center. Dr. Brucker submitted the bills for Reyher's treatment to State Farm for reimbursement. State Farm sent the bills to Sloans Lake, which reviewed them using the database. On Sloans Lake's recommendation, State Farm repriced eight bills, compensating Dr. Brucker only for the amount it deemed reasonable. In response, Dr. Brucker wrote State Farm asserting that he was the only orthopedic surgeon in his geographic location and requested one bill be reviewed further. State Farm did not change its position.

Dr. Brucker billed Reyher for, and she paid, the amount that State Farm refused to pay on two of the eight bills. Three years later, Dr. Brucker's office reimbursed her due to an alleged clerical error.

Reyher and Dr. Brucker filed suit against State Farm and Sloans Lake, asserting claims for (1) declaratory relief; (2) breach of contract and violation of No–Fault statute; (3) breach of implied covenant of good faith and fair dealing; (4) statutory willful and wanton breach of contract; (5) statutory deceptive trade practice violation; and (6) civil conspiracy. They asserted the claims in their individual capacities and as representatives of insureds and providers similarly situated. They settled their claims against Sloans Lake.

State Farm moved for summary judgment, arguing that plaintiffs could not legally prevail on their claims because the Colorado Division of Insurance (DOI) had found that by using the database to consider the medical bills' reasonableness, State Farm did not presumptively violate a DOI regulation relating to the Unfair Competition—Deceptive Practices Act (UCDPA), § 10–3–1104(1)(h)(III)–(IV), C.R.S.2009. The trial court granted the motion and entered judgment for State Farm.

Plaintiffs appealed, and in *Reyher v. State Farm Mutual Automobile Insurance Co.,* 171 P.3d 1263 (Colo.App.2007), a division of this court reversed the summary judgment. The division reasoned that the DOI's finding was, at most, binding only as to the issue it actually decided, namely, that by using the database to consider the medical bills' reasonableness State Farm did not presumptively violate a DOI regulation. The DOI did not decide whether the database recommendations conclusively determined the "reasonable" amount of medical expenses in all cases, or whether State Farm's reliance on those recommendations was sufficient to discharge its statutory, contractual, and common law duties. Additionally, factual issues remained as to whether State Farm paid all reasonable medical bills of Reyher and Dr. Brucker or the other putative class members.

On remand, plaintiffs moved for an order compelling State Farm to answer a second set of interrogatories and honor their requests for production. State Farm moved for a protective order relieving it from responding to the discovery requests. After determining the requests were untimely and overly broad, the trial court granted State Farm's motion and denied plaintiffs'.

Plaintiffs subsequently moved for class certification. While the parties were briefing the certification issue, State Farm filed a motion to dismiss Reyher's claims because she lacked standing and a motion for sanctions against Dr. Brucker for spoliating evidence. The court granted both motions.

Regarding the standing motion, the court concluded that State Farm's actions caused Reyher no injury because Dr. Brucker reimbursed the money she paid to cover the difference between the amount Dr. Brucker billed and the amount State Farm paid him. The court thus dismissed Reyher's claims. As to the spoliation motion, the court found that when Dr. Brucker sold his practice, he failed to preserve various documents. As a sanction, the court granted all adverse inferences requested by State Farm.

Several months later, the court denied plaintiffs' class certification motion, concluding that no class certification requirement under C.R.C.P. 23 had been satisfied.

The court then certified the class certification order and the dismissal order as final orders pursuant to C.R.C.P. 54(b). Plaintiffs appealed those orders, as well as the discovery and spoliation orders. The appeals were consolidated.

## II. Analysis

### A. Reyher's Standing

Plaintiffs contend that the trial court erred in dismissing Reyher's claims because she lacks standing. We agree.

■ Whether a plaintiff has standing is a legal question we review de novo. *Barber v. Ritter,* 196 P.3d 238, 245 (Colo.2008).

■ In Colorado, plaintiffs benefit from a relatively broad definition of standing that has traditionally been relatively easy to satisfy. *Ainscough v. Owens,* 90 P.3d 851, 855–56

(Colo.2004). They have standing if they suffer an injury in fact to a legally protected interest. *Wimberly v. Ettenberg,* 194 Colo. 163, 168, 570 P.2d 535, 538 (1977).

■■■ A legally protected interest is any right arising from a constitution, statute, common law, contract, rule, or regulation. *Ainscough,* 90 P.3d at 856. It may be tangible or economic, like interests arising from contract, property, or statutes that confer a privilege; or it may be intangible, like the interests in free speech or expression. *Id.*

■■■ Plaintiffs satisfy the injury in fact requirement by showing that the defendant's actions have caused or have threatened to cause them injury. *Syfrett v. Pullen,* 209 P.3d 1167, 1169 (Colo.App.2008). An injury in fact may be tangible, like economic harm or physical damage; or it may be intangible, like a deprivation of a legally created right. *Ainscough,* 90 P.3d at 856.

■■■ Here, Reyher has a legally protected interest in avoiding financial liability for expenses covered by her policy. *See id.* She suffered an injury in fact to this interest when she paid the difference between the allegedly reasonable amount Dr. Brucker charged for his services and the amount State Farm paid him. *See id.* Thus, to the extent Reyher paid for covered services, she has standing. *Id.*

Moreover, although Dr. Brucker reimbursed her payment three years later, Reyher still suffered a tangible economic injury by being without her money for three years and therefore losing its time value. *See O'Bryant v. Pub. Utils. Comm'n,* 778 P.2d 648, 653 (Colo.1989) (plaintiff's noneconomic and economic injuries, "while arguably not severe," satisfied injury in fact requirement); *Bruce W. Higley, D.D.S., M.S., P.A. Defined Ben. Annuity Plan v. Kidder, Peabody & Co.,* 920 P.2d 884, 890 (Colo.App.1996) (individual had standing to intervene in class action based, in part, on his assertion that he had an interest in the action due to losing the time value of the money he had invested). Like paying Dr. Brucker the amount of his bills not paid by State Farm, Reyher's loss of her money's time value is also an injury to her interest in avoiding liability for expenses

covered by her policy. She would not have incurred such financial liability if not for State Farm's allegedly wrongfully withholding covered expenses. *See also* § 10–4–708(1.8) (authorizing insured to collect 18% interest on wrongfully withheld benefit payments); *Mid–Century Ins. Co. v. Travelers Indem. Co.,* 982 P.2d 310, 315 (Colo.1999).

Thus, Reyher has standing to seek recovery from State Farm. State Farm, however, argues that Reyher lacks standing for three reasons. We reject each argument in turn.

### 1. Scope of Assignment

First, State Farm argues that Reyher lacks standing because she assigned to Dr. Brucker without reservation her interests in any claims against State Farm—including claims under the No–Fault Act and her insurance contract—leaving Reyher without any legally cognizable interest in the action. We disagree.

■■■ We interpret an assignment de novo. *See Copper Mountain, Inc. v. Indus. Sys., Inc.,* 208 P.3d 692, 697 (Colo.2009) (contract's interpretation is reviewed de novo); *Regency Realty Investors, LLC v. Cleary Fire Protection, Inc.,* —— P.3d ——, ——, 2009 WL 2782228 (Colo.App. No. 08CA1650, Sept. 3, 2009) (assignment's validity is reviewed de novo).

The assignment here provided: "I … assign directly to Dr. Brucker all insurance benefits, if any, otherwise payable to me for services rendered. I understand that I am financially responsible for all charges."

■■■ The assignment makes clear that Reyher assigned to Dr. Brucker the payments State Farm owes her for the services Dr. Brucker rendered, but that she reserved for herself the ultimate financial responsibility for Dr. Brucker's charges. Thus, contrary to State Farm's assertion, Reyher's assignment was not without reservation. Rather, in reserving the financial responsibility for the charges, she retained a legally protected interest in avoiding liability for expenses covered by her policy. *Cf. Thistle, Inc. v. Tenneco, Inc.,* 872 P.2d 1302, 1305 (Colo.App. 1993) (assignment of "all rights, title and

interest" included interests in a licensing agreement and a chose in action).

Indeed, Reyher's reserved interest is evidenced by Dr. Brucker's billing her, and her paying, the difference between the amount State Farm paid and the amount Dr. Brucker charged. Even State Farm recognized, in its "Colorado PIP Reprice Program" document, that its insureds were responsible for paying the difference between what their doctors billed and what State Farm paid: "If the doctor charges more than a reasonable fee and is unwilling to accept our payment as the full amount owed, you [the insured] may be responsible for the balance owed." Therefore, any claims stemming from that financial liability belong to Reyher and not Dr. Brucker.

### 2. Persons Entitled to Sue Under the No–Fault Act

■ Next, State Farm argues that Reyher lacks standing because the No–Fault Act limits recovery to the "person entitled to [the] benefits." And, because Reyher assigned "all insurance benefits . . . payable for . . . services rendered" to Dr. Brucker, he is the only person entitled to the benefits. We disagree.

■ Statutory interpretation is a legal issue we review de novo. *Minh Le v. Colo. Dep't of Revenue,* 198 P.3d 1247, 1251 (Colo. App.2008).

Section 10–4–708.4(1)(a) permitted insureds to assign to their health care providers their right to benefits payments due under their policies, and section 10–4–708(1) provided that the "person entitled to such benefits" may bring a contract action to recover those payments the insurer fails to pay. Because section 10–4–708(1) used the phrase "person entitled to such benefits" rather than the term "insured," State Farm correctly notes that the "person entitled to such benefits" is not limited to the insured and can include an assignee. *Cf. Mid–Century Ins. Co.,* 982 P.2d at 315 (in penalty provision of No–Fault Act, use of term "insured" instead of "other party" limited penalty recovery to insureds).

Here, to compensate Dr. Brucker for his medical services, Reyher assigned to him the payments due to her under the policy. Thus, to the extent Dr. Brucker had not collected his reasonable charges in full, section 10–4–708(1) authorized him to bring an action against State Farm. *See Tivoli Ventures, Inc. v. Bumann,* 870 P.2d 1244, 1248 (Colo.1994) (assignee stands in the shoes of the assignor).

However, as noted above, Reyher reserved in her assignment ultimate financial responsibility for Dr. Brucker's charges. Thus, the assignment was necessarily conditioned on State Farm's fulfilling its contractual and statutory obligation to pay all reasonable medical expenses charged by Dr. Brucker.

Therefore, when State Farm allegedly breached its obligation to pay Dr. Brucker's reasonable charges and Reyher paid the balance, she suffered a tangible, economic injury, giving her standing to seek recovery from State Farm as a "person entitled to [the] benefits." *Ainscough,* 90 P.3d at 856.

As we concluded above, even though Dr. Brucker reimbursed Reyher, her interest in avoiding liability for expenses covered by her policy was nevertheless injured by the loss of her money's time value. *See O'Bryant,* 778 P.2d at 653 (plaintiff's noneconomic and economic injuries, "while arguably not severe," satisfied injury in fact requirement); *see also* § 10–4–708(1.8) (authorizing insured to collect 18% interest on wrongfully withheld benefit payments); *Mid–Century Ins. Co.,* 982 P.2d at 315.

Accordingly, Reyher's assignment did not deprive her of standing as a "person entitled to [the] benefits." *Ainscough,* 90 P.3d at 856.

### 3. Applicability of *LaBerenz*

Finally, State Farm argues that Reyher lacks standing because her allegations and claims are substantially the same as the insureds' in *LaBerenz v. American Family Mutual Insurance Co.,* 181 P.3d 328 (Colo. App.2007), where the insureds lacked standing because they did not pay for any repriced bills. We disagree.

Although the claims here are the same as those in *LaBerenz,* the relationships among the insurers, insureds, and doctors differ. In *LaBerenz,* when doctors refused to accept the insurer's reduced payment, the insurer paid the difference in order to protect its insureds from financial liability. *LaBerenz,* 181 P.3d at 337 ("[I]f the [doctor] insisted on payment of the bill in full or indicated it would pursue collection of the balance from the insured, [the insurer] would ultimately pay the entire bill."). Thus, the insureds in *LaBerenz* suffered no damages. *See id.*

In contrast, here, State Farm's insureds were financially responsible for any remaining balances owed to their doctors. Thus, if doctors refused to accept State Farm's reduced payment, either the insureds were forced to pay the balance or the doctors had to write it off. Unlike the insureds in *LaBerenz,* Reyher paid such a balance. Therefore, she suffered a tangible, economic injury entitling her to standing. *Ainscough,* 90 P.3d at 856.

Accordingly, Reyher has standing. *See id.*

## B. Dr. Brucker's Standing

Although the parties do not dispute Dr. Brucker's standing, we raise it here because it is jurisdictional. *See Shelter Mutual Insurance Co. v. Mid–Century Insurance Co.,* 214 P.3d 489, 495 (Colo.App.2008) (*cert. granted* Aug. 31, 2009) (jurisdictional nature of standing requires sua sponte inquiry).

The record includes conflicting facts concerning Dr. Brucker's standing. For example, the record indicates that Reyher assigned to Dr. Brucker the payments State Farm owes her for the services Dr. Brucker rendered; Dr. Brucker was an independent contractor who appears to have set his own fee schedules; he conducted billings and collection; and he sold his practice. However, the record also indicates that Arkansas Valley Regional Medical Center paid Dr. Brucker a salary that appears to be unaffected by whether insurers paid patients' bills.

Because the record, in part, suggests Dr. Brucker may not have standing and because we have insufficient evidence to decide the issue, we remand for further proceedings to determine this threshold inquiry. *See id.*

## C. Class Certification

Plaintiffs contend that the trial court abused its discretion in denying their motion for class certification. With respect to the insured class, we agree. With respect to the provider class, we agree subject to the trial court's determining Dr. Brucker's standing.

### 1. Jurisdiction

As a threshold matter, we note that we have jurisdiction to review the trial court's order denying plaintiffs' motion for class certification for two reasons. First, the order was properly certified pursuant to C.R.C.P. 54(b). *Levine v. Empire Savings & Loan Ass'n,* 192 Colo. 188, 189–90, 557 P.2d 386, 387 (1976). Second, the requirements for appellate review of class certification orders set forth in section 13–20–901, C.R.S. 2009, do not apply because this action was filed before the statute's effective date. § 13–20–901 ("This act shall take effect July 1, 2003, and shall apply to civil actions filed on or after said date.").

### 2. Class Action Law and Analysis

The basic purpose of a class action is "to eliminate the need for repetitious filing of many separate lawsuits involving the interests of large numbers of persons and common issues of law or fact by providing a fair and economical method for disposing of a multiplicity of claims in one lawsuit." *Mountain States Tel. & Tel. Co. v. Dist. Court,* 778 P.2d 667, 671 (Colo.1989). "This purpose is realized by permitting one or more members of the class to sue or be sued on behalf of all class members." *Id.*

Trial courts possess considerable discretion in managing class actions, including the discretion to certify, decertify, or recertify classes. *LaBerenz,* 181 P.3d at 333; *Jackson v. Unocal Corp.,* 231 P.3d 12, ——, 2009 WL 2182603 (Colo.App. No. 09CA0610, July 23, 2009). Thus, we review for an abuse of discretion a trial court's grant or denial of class certification. *Farmers Ins. Exch. v. Benzing,* 206 P.3d 812, 818 (Colo.2009). A

trial court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if the decision relies on unsupported factual assertions, erroneous legal conclusions, incorrect legal standards, or an erroneous application of law. *Medina v. Conseco Annuity Assurance Co.*, 121 P.3d 345, 347 (Colo.App.2005); *Toothman v. Freeborn & Peters*, 80 P.3d 804, 809 (Colo.App.2002); *see Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 183 (3d Cir.2001).

■■ Although we review the certification ruling for an abuse of discretion, we review de novo the purely legal determinations supporting the certification ruling, and we defer to the court's factual findings if supported by the record. *Ammons v. Am. Family Mut. Ins. Co.*, 897 P.2d 860, 863 (Colo.App.1995); *see Yokoyama v. Midland Nat'l Life Ins. Co.*, 2009 WL 2634770 (9th Cir.2009).

C.R.C.P. 23 sets forth the requirements for certifying a class action. *Benzing*, 206 P.3d at 818. C.R.C.P. 23(a) requires a plaintiff to show by a preponderance of the evidence that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

*Jackson*, 231 P.3d at 17 (preponderance of evidence is proper burden of proof).

■■ The numerosity and commonality requirements of C.R.C.P. 23(a)(1)-(2) address whether the case is appropriate for class treatment, whereas the typicality and adequacy requirements of C.R.C.P. 23(a)(3)-(4) address whether the named plaintiff is an appropriate class representative. Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 3:10 (4th ed.2002).

In addition to the requirements of C.R.C.P. 23(a), a plaintiff must show by a preponderance of the evidence that one of the three subsections of C.R.C.P. 23(b) is satisfied:

(1) The prosecution of separate actions by or against individual members of the class would create a risk of:

(A) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or

(B) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interest; or

(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

*See Benzing*, 206 P.3d at 818; *Jackson*, 231 P.3d at 17 (preponderance of evidence is proper burden of proof).

■■ In evaluating whether the C.R.C.P. 23 requirements are satisfied, courts must generally accept as true the allegations supporting certification and must not base their determination on whether the class will ultimately succeed in establishing each element necessary to prove its claims. *Benzing*, 206 P.3d at 818, 820. Courts must also liberally construe C.R.C.P. 23 because its policy favors maintaining class actions. *Id.* at 818.

Because "C.R.C.P. 23 is virtually identical to Fed.R.Civ.P. 23," we rely on cases applying the federal rule when interpreting the Colorado counterpart. *Goebel v. Colo. Dep't of Institutions*, 764 P.2d 785, 794 n. 12 (Colo. 1988); *Jackson*, 231 P.3d at 18.

### a. Numerosity

To satisfy the numerosity requirement of C.R.C.P. 23(a)(1), a plaintiff must show by a preponderance of the evidence that the class is sufficiently large to render joinder impracticable. *LaBerenz*, 181 P.3d at 334; *Jackson*, 231 P.3d at 24. Because the defined class's actual size is a significant factor in determining numerosity, merely speculating as to its size is insufficient. *LaBerenz*, 181 P.3d at 334. Thus, although the numerosity requirement imposes no limitations, it requires a fact-specific evaluation of each case. *Id.*

In determining whether the numerosity requirement is satisfied, a court may consider reasonable inferences that can be drawn from the facts alleged. *Id.* Thus, the numerosity requirement is satisfied where the exact class size is unknown, but general knowledge and common sense indicate it is large. *Id.* at 334–35.

Here, because State Farm repriced bills in 13,747 claims, the trial court determined that the size of the proposed insured and provider classes could be ascertained without mere speculation and determined that they were sufficiently large to render joinder impracticable. We agree.

Nevertheless, the trial court concluded that plaintiffs had not satisfied the numerosity requirement because they did not show that all putative class members had suffered damages. Quoting *LaBerenz*, the trial court noted that it is "necessary for plaintiffs to show that all putative class members were damaged by [the insurer's] action." *LaBerenz*, 181 P.3d at 337.

However, the statements regarding damages in *LaBerenz* must be understood in the context of the facts of *LaBerenz*. In *LaBerenz*, undisputed evidence indicated that the insurer had a policy of paying the balance of any bills a provider charged to an insured because of database repricing. *Id.* Thus, common sense dictated that few, if any, insureds suffered any damages. *Id.* Accordingly, the plaintiff could not show that a sufficiently large number of insureds could have been injured so as to render joinder impracticable. *Id.*

Thus, considered with its facts, *LaBerenz* does not stand for the proposition that plaintiffs must prove that each putative class member suffered damages to obtain class certification. *See id.; see also Kohen v. Pacific Investment Mgmt. Co.*, 571 F.3d 672, 676 (7th Cir.2009) ("[A] class will often include persons who have not been injured by the defendant's conduct; indeed this is almost inevitable because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown. Such a possibility or indeed inevitability does not preclude class certification."); 59 Am.Jur.2d Parties § 74 ("Named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other members of the class which they purportedly represent.").

Rather, *LaBerenz* stands for the proposition that a court may deny class certification if common sense dictates that very few people in the putative class suffered any injury. *See LaBerenz*, 181 P.3d at 337 ("Applying a common sense approach to the reasonable inferences to be drawn from the evidence in the record, the number of insureds who actually suffered any damage is likely very small. Thus, we conclude the trial court did not abuse its discretion in ruling that plaintiffs produced no evidence to permit a conclusion that joinder of all insured class members was impracticable, and, accordingly, failed to sustain their burden of establishing numerosity pursuant to C.R.C.P. 23(a)(1)."); *see also Kohen*, 571 F.3d at 677 ("[A] class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant.").

Here, the trial court properly determined that, based upon State Farm's repricing of bills in over 13,000 claims, common sense dictated that the putative insured and provider classes were sufficiently large as to render joinder impracticable. Because no more is required, plaintiffs satisfy the numerosity requirement.

### b. Commonality

To satisfy the commonality requirement under C.R.C.P. 23(a)(1), plaintiffs must

show by a preponderance of the evidence that there are legal or factual issues common to the class. *LaBerenz,* 181 P.3d at 338; *Jackson,* 231 P.3d at —— (preponderance of evidence is proper burden of proof); *but see Clark v. State Farm Mut. Auto. Ins. Co.,* 245 F.R.D. 478, 483–84 (D.Colo.2007) (noting that courts are divided on whether the commonality requirement requires only a single common ·issue, or whether there must be two common issues).

 Here, the trial court concluded that plaintiffs did not satisfy the commonality requirement because there are many individualized factual issues that must be resolved. However, individualized factual issues do not defeat commonality. *Garcia v. Medved Chevrolet, Inc.,* —— P.3d ——, ——, 2009 WL 3765481 (Colo.App. No. 09CA1465, Nov. 12, 2009) ("Establishing commonality does not necessarily mean that every issue must be common to the class."); *LaBerenz,* 181 P.3d at 338 ("[T]here may be varying fact situations among individual members of the class· and this is all right ...." (quoting *Joseph v. General Motors Corp.,* 109 F.R.D. 635, 639–40 (D.Colo.1986))).

 The putative class members here share many factual and legal issues in common, including whether State Farm had a company-wide practice of using only the database to assess the reasonableness of medical charges, whether the database was capable of assessing the reasonableness ..of medical charges, whether State Farm's reliance on the database was sufficient to satisfy State Farm's contractual and statutory obligations, whether State Farm's reliance on the database resulted in a willful and wanton failure to pay benefits, and whether State Farm breached the implied contractual covenant of .good faith and fair dealing. Resolution of these issues could conceivably result in a common judgment in favor of the class. *See* §§ 10–3–1104(1)(h)(III)–(IV), 10–4–708(1). Thus, the commonality requirement is satisfied. *See LaBerenz,* 181 P.3d at 338 (a common legal or remedial theory is sufficient to satisfy commonality requirement); *Garcia,* —— P.3d at —— (same); *see also Cook v. Rockwell Int'l Corp.,* 181 F.R.D. 473, 480 (D.Colo.1998)

(claims need only "arise from the same set of broad circumstances" to satisfy commonality requirement); *Colo. Cross–Disability Coalition v. Taco Bell Corp.,* 184 F.R.D. 354, 359 (D.Colo.1999) (same).

### c. Typicality

 To satisfy the typicality requirement of C.R.C.P. 23(a)(3), plaintiffs must show by a preponderance of the evidence that their claims or defenses are typical of those belonging to the class. *LaBerenz,* 181 P.3d at 339; *see Jackson,* 231 P.3d at ——. Typicality is satisfied, regardless of the varying facts underlying each individual claim, if the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented. *LaBerenz,* 181 P.3d at 339.

 Here, the trial court concluded that plaintiffs failed to demonstrate typicality because "their claims bring into consideration controversies unique to them," namely Reyher's reimbursement and Dr. Brucker's status as a salaried employee. However, whether class members also assigned their benefits payments or have salary contracts does not, as a matter of law, defeat typicality. Such issues go to the amount of ·damages ·class members may ultimately recover and do not go to the typicality consideration of whether State Farm engaged in unlawful conduct that was directed at or affected the named plaintiffs and the class sought to be represented. *Kuhn v. State Dep't of Revenue,* 817 P.2d 101, 105 (Colo.1991) ("Nor does the fact that, if the class prevails, each class member will be owed a different [damages] amount defeat typicality."); *Jackson,* 231 P.3d at 26 (same).

Plaintiffs allege, inter alia, that State Farm failed to pay reasonable benefits because of its system-wide practice of relying on a database incapable of determining reasonableness and relying solely on the database without investigation. Because plaintiffs assert that the unlawful conduct was directed at all insureds and providers, including plaintiffs, the typicality requirement is satisfied. *See LaBerenz,* 181 P.3d at 339 (typicality is satisfied if same unlawful conduct was directed at

class and plaintiff; typicality was satisfied where insurer, for the same reason, allegedly reduced payments to plaintiff health care provider and class of providers).

### d. Adequacy

■ To satisfy the adequacy requirement of C.R.C.P. 23(a)(4), plaintiffs must show by a preponderance of the evidence that they "will fairly and adequately protect the interests of the class." *Jackson*, 231 P.3d at 17. To this end, named plaintiffs must have no conflicting interests with the class they seek to represent, and the plaintiffs must be represented by competent counsel. *See Kuhn*, 817 P.2d at 106.

■ Here, with record support, the trial court found that plaintiffs' counsel are able to capably represent the interests of the class. Nevertheless, the court determined that plaintiffs did not satisfy the adequacy requirement. The court reasoned that plaintiffs had not been injured, they stood in a factual situation different from the class members, and the relief they sought was only the same as to the ultimate liability question in the suit. Thus, the court concluded the adequacy requirement was not satisfied.

As discussed, Reyher has standing, and we remand for proceedings to determine Dr. Brucker's standing. Moreover, although the court correctly noted that plaintiffs and the various class members may be entitled to different damages due to their respective factual situations, the court erred in concluding that this rendered plaintiffs inadequate class representatives. Variations in entitlement to damages among the named plaintiffs and class members do not constitute a conflict of interest. *See Santoro v. Aargon Agency, Inc.*, 252 F.R.D. 675, 683 (D.Nev. 2008) (no conflicting interests where plaintiff was only entitled to statutory damages and class members may have also been entitled to actual damages); *Jackson*, 231 P.3d at 26 ("Variations in damages suffered by class members ... do not prevent class certification as a matter of law.").

Here, plaintiffs' interests do not conflict with the classes' interests because their entitlement to relief, even if for different amounts, depends on a shared victory over State Farm on the liability issue. *See Jackson*, 231 P.3d at ——; *In re Serzone Prods. Liability Litigation*, 231 F.R.D. 221, 238 (S.D.W.Va.2005) (although damages vary between plaintiff and class members, adequacy requirement satisfied where plaintiffs and class members had aligned interests in establishing defendant's liability). Therefore, the adequacy requirement is satisfied. *See Kuhn*, 817 P.2d at 106.

■ Additionally, we decline to address State Farm's argument that the insureds' interests conflict with the providers' interests because insureds would benefit from narrow interpretation of assignments. State Farm asserts that insureds can collect statutory penalties and treble damages if assignments are narrowly interpreted. However, State Farm does not explain this conclusory argument, nor does it provide any citations in support. Thus, we decline to address it. *See Sinclair Transp. Co. v. Sandberg*, 228 P.3d 198, —— (Colo.App. 2009) (collecting cases).

### e. Predominance and Superiority

As discussed, plaintiffs seeking class certification must also show by a preponderance of evidence that one of the requirements of C.R.C.P. 23(b) is satisfied. *Jackson*, 231 P.3d at ——. C.R.C.P. 23(b)(3) requires, first, that legal or factual questions common to the class predominate over questions affecting only individual members and, second, that a class action is superior to other available methods for fair and efficient adjudication of the controversy. C.R.C.P. 23(b); *Jackson*, 231 P.3d at 17.

■ For purposes of C.R.C.P. 23(b)(3), common issues predominate where a plaintiff has a method of proving a defendant's liability by class-wide proof. *Benzing*, 206 P.3d at 820.

■ Here, the court parsed out various common issues and various individual issues and concluded that plaintiffs cannot prove State Farm liable with class-wide proof. However, plaintiffs could, for example, prove that State Farm had a company-wide practice of unlawfully relying solely on the database without investigation to reprice the

class members' bills. Plaintiffs could also conceivably prove that State Farm systematically failed to pay the class members' reasonable medical bills because it determined reasonable payments by using a database incapable of determining reasonableness, thus rendering the repriced payments necessarily not reasonable. Because these are examples of class-wide proof, the predominance prong of C.R.C.P. 23(b)(3) is satisfied. *See Benzing*, 206 P.3d at 820; *see also Houck v. Farmers Ins. Co.*, 229 P.3d 551, —— (Okla.Civ.App. 2009) (predominance satisfied under largely identical facts); *Burgess v. Farmers Ins. Co.*, 151 P.3d 92, 99–100 (Okla. 2006) ("Insurer would have us reject class certification on the basis of a determination ... that Insurer in fact did not operate pursuant to an across-the-board pattern of underpayment of claims, but rather, made individual assessments as to the propriety of O & P payments on every claim.... The thrust of Insurer's argument on appeal is primarily an attack on the merits....").

The trial court also concluded that the superiority of C.R.C.P. 23(b)(3) was not satisfied. It concluded that a class action would not be the best way to fairly and efficiently adjudicate the claims of insureds and providers because of its determination that none of the other C.R.C.P. 23 requirements were satisfied. However, as discussed, the other requirements are satisfied.

Moreover, the superiority prong is also satisfied because the class members' and plaintiffs' relatively small damages would cause each claim to be too costly to litigate individually. *See Houck*, 229 P.3d at ——; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617, 117 S.Ct. 2231, 2246, 138 L.Ed.2d 689 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir.1997))); *Colo. Cross–Disability Coalition*, 184 F.R.D. at 362 ("[T]he class action

is the superior method of managing this dispute which involves a large number of class members who have a relatively small amount of individual damages.... When the entire class is composed of small claimants ... denial of a class action would effectively exclude them from judicial redress." (quoting *Thrope v. Ohio*, 173 F.R.D. 483, 490–91 (S.D.Ohio 1997))); *City Partnership Co. v. Jones Intercable, Inc.*, 213 F.R.D. 576, 581 (D.Colo.2002) (same in the context of securities litigation).

Because the class certification denial was based on erroneous legal conclusions, incorrect legal standards, and erroneous applications of law, it was an abuse of discretion. *Medina*, 121 P.3d at 347; *Toothman*, 80 P.3d at 809; *see Johnston*, 265 F.3d at 183. Moreover, because, as discussed, the C.R.C.P. 23 requirements are satisfied, we reverse the order denying plaintiffs' motion for class certification and remand with instructions to grant plaintiffs' motion to certify the proposed insured class, as well as the proposed provider class if the court determines that Dr. Brucker has standing to serve as the class representative. *See Benzing*, 206 P.3d at 818 (class certification is proper where C.R.C.P. 23 requirements are satisfied; courts should liberally construe C.R.C.P. 23 because of policy favoring class actions).

### D. Motion to Compel, Protective Order, and Spoliation Order

Plaintiffs also contend that the trial court erred in denying their motion to compel discovery and in granting State Farm's motions for a protective order and for spoliation sanctions. We do not consider these contentions.

Pursuant to *Levine*, 192 Colo. at 189–90, 557 P.2d at 387, we have jurisdiction to review the denial of plaintiffs' class certification motion, which the trial court certified as a final order pursuant to C.R.C.P. 54(b). *Cf.* § 13–20–901 (applies to actions filed after July 1, 2003). Plaintiffs contend that we also have jurisdiction to review discovery orders denying evidence relating to certification because such evidence may affect our ruling on certification. Assuming this is correct, we nevertheless do not review such orders here

because, as discussed, we reverse the class certification denial even without such evidence. Thus, such evidence is not necessary to our review of the class certification order.

The orders dismissing Reyher's claims and denying class certification are reversed. The case is remanded with instructions to determine whether Dr. Brucker has standing and to grant plaintiffs' motion to certify the insured class, as well as the provider class if the court determines Dr. Brucker has standing.

Judge LOEB and Judge LICHTENSTEIN concur.